IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ICON OUTDOORS, LLC, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-11-2967 |
| CORE RESOURCES, INC., | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Icon Outdoors, LLC ("Plaintiff" or "Icon") brings this action against Defendant Core Resources, Inc. ("Defendant" or "Core"), alleging infringement of United States Patent Number 7,318,239 (the "'239 Patent"). Currently pending before this Court is Core's Motion for Summary Judgment (ECF No. 56). The issues have been fully briefed, and this Court held a motions hearing on May 16, 2013. For the reasons stated below, Core's Motion for Summary Judgment (ECF No. 56) is GRANTED IN PART and DENIED IN PART. Specifically, Core's Motion for Summary Judgment is GRANTED as to (1) Icon's waiver of its infringement contentions under the doctrine of equivalents and (2) the award of publication damages. Because genuine issues of material fact exist, Core's Motion for Summary Judgment is DENIED as to the following issues: (1) the validity of the '239 Patent; (2) whether Core's Redesigned Wader Shirt literally infringes the '239 Patent; (3) the potential award of damages for infringement during the period in which Icon failed

to mark its patented product;[1] and (4) the potential award of lost profits damages. Accordingly, partial summary judgment IS ENTERED in favor of Core and against Icon on Icon's allegations of infringement on the basis of the doctrine of equivalents as well as on Icon's claim for publication damages.

<u>BACKGROUND</u>

Plaintiff Icon Outdoors ("Plaintiff" or "Icon") is a Maryland limited liability corporation with its principal place of business in Ellicott City, Maryland. Compl. ¶ 1, ECF No. 1. Defendant Core Resources ("Defendant" or "Core") is a Minnesota corporation with its principal place of business in Burnsville, Minnesota. *Id.* ¶ 2. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1338(a), because the action arises under the patent laws of the United States, as well as federal question and diversity jurisdiction, pursuant to 28 U.S.C. § 1331 and § 1332. There is personal jurisdiction over the Core, because Core has a continuous and systematic business contact with the State of Maryland, where it markets and sells its products. Compl. ¶¶ 6-7.

I.     **The '239 Patent and Prosecution History**

Plaintiff Icon owns United States Patent Number 7,318,239 (the "'239 Patent"), which is entitled "Waterfowl Hunter's Dual-Function Top Garments." *See* '239 Patent, ECF No. 1-1. The '239 Patent was first filed as United States Patent Application 10/839,000 (" '000 Application") on May 5, 2004. *Id.* at 1. That application was published on November 11, 2004, as United States Patent Application US 2004/0221360 (" '360 Patent Application

---

[1] Under 35 U.S.C. § 287, a patentee may give notice to the public that its invention is patented by marking the invention with the patent number or with a label or address of an Internet posting providing that information. 35 U.S.C. § 287(a). If a patentee fails to mark, "no damages shall be recovered" for infringement, unless the infringer was given actual notice of the infringement. *Id.*

Publication"). *Id.* Ultimately, the '239 Patent issued on January 15, 2008. *Id.*

The '239 Patent describes a hunter's top garment intended for use with chest waders. The garment contains upper and lower portions with distinct functions. The upper portion acts as a waterproof and windproof coat to keep a hunter warm and dry above his chest wader, while the lower portion, to be worn under the chest wader, is comprised of a breathable, layering material. *See id.* at col. 2, ll. 4-22.

As originally filed, the patent application identified the chest as the line at which the upper portion of the garment transitions into the lower portion (hereinafter, the "line of transition"). For example, the application describes the garment's upper and lower portions in relation to the chest, with the upper portion "above the chest" and the lower portion "beneath the chest." *See* Def.'s App'x D, p. 126, ll. 14-16, ECF No. 28-4. Additionally, the application's "claims" section refers to the upper portion as "positioned at chest level and above" and the lower portion "attached to said upper portion and extending downward there from." *Id.* at 139, ll. 9-11.

On September 8, 2005, an examiner from the United States Patent and Trademark Office, Gloria M. Hale ("the Examiner"), rejected the application for several reasons. Relevant to the issues presented in this case, the Examiner found that the claims identifying the line of transition at the chest failed for indefiniteness, as "it is not clear as to where the 'chest level' begins or ends." Def.'s App'x E, p. 3, ECF No. 28-5. Moreover, the Examiner rejected Claims 1 and 18 for their use of the phrase "waterproof or windproof," because the two are not structurally equivalent characteristics. *Id.* at 3-4.

In response to the Examiner's rejections, the garment's inventors submitted an

amended '000 Patent Application. To cure the Examiner's finding of indefiniteness, the amended application specified the sternum as the line of transition between the upper and lower portions of the top garment. *See* New U.S. Patent Application, Def.'s App'x F, ECF No. 28-6. Additionally, Claims 1 and 18 were amended to read "waterproof and windproof," rather than "waterproof or windproof." *See id.* at 94, 98. The PTO accepted the amended application, and the '239 Patent issued on January 15, 2008. *See* '239 Patent.

## II.   Icon's Infringement Allegations

On February 14, 2008, Icon sent a letter to its competitor, Core, notifying Core of the alleged infringement of the '239 Patent by Core's own hunting garment, referred to as the Wader Shirt. *See* Affidavit of Kevin Cook ("Cook Aff.") ¶ 14; Ex. J, ECF No. 56-83. In the letter, Icon explained that Core's Wader Shirt was "structurally identical" to the '239 Patent and demanded that Core "cease all sales" of the garment immediately. *See* Ex. J. Upon receipt of Icon's letter, Core halted production of its Wader Shirt (hereinafter, the "Original Wader Shirt") scheduled for importation into the United States in the summer of 2008 from manufacturers outside of the country. Cook Aff. ¶ 16.

To avoid infringement, Core redesigned the Original Wader Shirt, lowering the line of transition on the garment at least six inches. *See id.* ¶ 17. After issuance of the '239 Patent, Core manufactured and imported into the United States only the redesigned version of the Wader Shirt (hereinafter, "Redesigned Wader Shirt"). *Id.* ¶ 19. On September 27, 2010, Icon sent another letter to Core, notifying Core of the alleged infringement of the '239 Patent by Core's Redesigned Wader Shirt. *See id.* ¶ 20; Ex. K. Core discontinued the Redesigned Wader Shirt in 2012. Cook Aff. ¶ 19.

On October 18, 2011, Icon filed the subject Complaint in this Court against Core, alleging that Core's Wader Shirt infringed the '239 Patent in violation of 35 U.S.C. § 271. *See* Compl., ECF No. 1. Specifically, Icon asserts that Core's Wader Shirt infringes, "literally and/or under the doctrine of equivalents," claims 1, 2, 4, 5, 9, 11, 13, 18, 19, and 21 of the '239 Patent. *Id.* ¶¶ 12-14, 16. In its prayer for relief, Icon seeks, among other requests, an award of compensatory damages for Core's infringement and an award of increased damages under 35 U.S.C. § 284 because Core's infringement was willful. *See id.* at 5.

## III.  This Court's Claim Construction of the '239 Patent

The '239 Patent contains twenty-one claims. Claims 1 and 18 are independent claims, meaning they do not "refer back to or depend on another claim."[2] Claim 1 provides as follows:

> 1.  A dual function hunting top garment for use with chest waders, bibs and overalls, comprising:
>> an upper portion, positioned at the sternum and above and including a pair of arms, all substantially comprised of a waterproof and windproof material; and
>> a lower portion attached to said upper portion and extending downward from there, from the chest to the waist, for wear underneath said chest waders, bibs or overalls, the lower portion comprising breathable non-waterproof and non-windproof material.

'239 Patent, col. 7, ll. 17-26. The other independent claim, Claim 18, reads as follows:

> 18. A dual function hunting top garment for hunting and fishing, comprising:
>> a top portion, at the sternum and above, including the arms, comprised of an outer shell made of a waterproof and windproof shell with an insulated lining;
>> a lower portion, from the sternum to the waist, comprised of a breathable non-laminated material.

---

[2] *See* U.S. PATENT & TRADEMARK OFF., GLOSSARY, http://www.uspto.gov/main/glossary/.

*Id.* at col. 8, ll. 35-42. The '239 Patent's remaining claims are dependent claims, meaning they refer back to the independent or dependent claims that precede them.[3] In the '239 Patent, each dependent claim refers back to, either directly or through another dependent claim, Claim 1 or Claim 18. *See id.* at col. 7 l. 27 – col. 8 l. 51.

On October 26, 2012, this Court held a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), on seven disputed claim terms in Claims 1, 2, and 18. Afterward, this Court issued a Memorandum Opinion setting forth its construction of the claim language. The following seven claim terms were construed as follows:

| Disputed Claim Terms | The Court's Claim Construction |
|---|---|
| "from the chest" (Claim 1 of the '239 Patent) | "from the sternum" |
| "sternum" (Claims 1 and 18) | "the compound ventral bone or cartilage that connects the ribs" |
| "an upper portion, positioned at the sternum and above" (Claim 1) | "a separate and distinct portion of a garment that begins over the sternum and extends upward from there" |
| "a top portion, at the sternum and above" (Claim 18) | "a separate and distinct portion of a garment that begins over the sternum and extends upward from there" |
| "a lower portion attached to said upper portion and extending downward from there, from the chest to the waist, for wear underneath said chest wader, bibs, or overalls" (Claim 1) | "a separate and distinct portion of a garment that begins over or immediately adjacent to the sternum and extends downward from there to the waist" |
| "a lower portion, from the sternum to the waist" (Claim 18) | "a separate and distinct portion of a garment that begins over or immediately adjacent to the sternum and extends downward from there to the waist" |
| "non-laminated material" (Claims 2 and 18) | "a material that is made up of a single layer having no waterproof or windproof layer bonded to another layer" |

---

[3] *See supra* note 2.

As a result of the Court's claim construction, the claims of the '239 Patent more closely correspond to the inventors' amendment of the patent application to claim a garment whose line of transition occurs at the sternum. *See, e.g.*, Claim Construction Mem. Op. 11-15, ECF No. 39. The invention described in Claim 1 involves an upper portion "positioned at the sternum and above," and a lower portion attached to the upper portion and extending downward "from the sternum" to the waist. *See id.* 11-15, 22-23. Likewise, Claim 18 describes an invention the upper portion of which "begins over the sternum and extends upward from there," while its lower portion "begins over or immediately adjacent to the sternum and extends downward from there." *See id.* at 21-22, 23.

## IV. Core's Motion for Summary Judgment

Core moves for summary judgment on several grounds, asking this Court to find that the '239 Patent is invalid, that Core's Redesigned Wader Shirt does not infringe, and that, assuming Icon were successful on the merits, its award of damages would be severely limited. In particular, Core asserts that the '239 Patent is invalid, because Claims 1 and 2 are anticipated under 35 U.S.C. § 102(b) and Claims 4, 5, 9, 11, 13, 18, 19, and 21 are obvious under 35 U.S.C. § 103(a). As to infringement, Core argues that the evidence in this case conclusively shows as a matter of law that Core's Redesigned Wader Shirt does not infringe the '239 Patent. Finally, Core argues that the following matters regarding an award of damages are without dispute: (1) that Icon is not entitled to damages for infringement by Wader Shirts on the market prior to the issuance of the '239 Patent; (2) that Icon should not receive publication damages, arising from the '360 Patent Application, under 35 U.S.C. § 154(d); (3) that Icon is precluded from recovering damages prior to at least September 27,

2010, because Icon failed to mark its patented product during that time; and (4) that Icon is precluded from recovering lost profits due to the availability of noninfringing alternatives.

For the reasons that follow, Core's Motion for Summary Judgment (ECF No. 56) is GRANTED IN PART and DENIED IN PART. Specifically, Core's Motion is GRANTED as to (1) Icon's waiver of its infringement contentions under the doctrine of equivalents and (2) the award of publication damages. However, Core's Motion for Summary Judgment is DENIED as to the following issues, as they involve genuine disputes of material facts: (1) the validity of the '239 Patent; (2) whether Core's Redesigned Wader Shirt literally infringes the '239 Patent; (3) the potential award of damages for infringement during the period in which Icon failed to mark; and (4) the potential award of lost profits damages. Accordingly, partial summary judgment IS ENTERED in favor of Core and against Icon on Icon's allegations of infringement under the doctrine of equivalents as well as on Icon's claim for publication damages.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, summary judgment is proper "only when no 'reasonable jury could return a verdict for the nonmoving party.'" *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001) (quoting *Anderson*, 477 U.S. at 255)). In considering a motion for summary judgment, a judge's function is limited

to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. A party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

<u>ANALYSIS</u>

This Court first addresses Core's arguments regarding the validity of the '239 Patent. Then, this Court turns to Core's argument that its Redesigned Wader Shirt does not infringe the '239 Patent. Finally, this Court confronts Core's arguments surrounding Icon's potential award of damages.

## I.      Core's Argument for Invalidity of the '239 Patent

In general, a United States Patent is presumed valid, and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."

35 U.S.C. § 282. An invalidity defense must be "proved by clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2243 (2011). The United States Court of Appeals for the Federal Circuit has explained that this high burden of proof stems from the fact that the party challenging a patent "bear[s] the added burden of overcoming the deference that is due to a qualified government agency presumed to have done its job." *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012) (citing *PharmaStem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1366 (Fed. Cir. 2007)). Two conditions of patentability are that the product be new, meaning it has not been anticipated by prior art, and that the product be nonobvious. *See* 35 U.S.C. §§ 102, 103.

A. Invalidity Based on Anticipation

Core asks this Court to find that Claims 1 and 2 of the '239 Patent are invalid because they were anticipated by prior art—namely, United States Patent Number 5,088,116 to Russell P. Gould (the "Gould Patent"). The Gould Patent was one of the pieces of prior art before the PTO Examiner during the prosecution of the '239 Patent. *See* Notice of References Cited, ECF No. 57-21. While the Examiner did not explicitly refer to the Gould Patent in her review, she noted that the prior art "made of record and not relied upon is considered pertinent to applicant's disclosure." Def.'s App'x E at 16, ECF No. 28-5.

A patent is invalid if it was anticipated by prior art. Invalidity based on anticipation is governed by 35 U.S.C. § 102. To find that prior art anticipated a patent claim, "each and every limitation [must be] found either expressly or inherently in single prior art reference." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1375 (Fed. Cir. 2006) (quoting *Celeritas Techs. Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998)). It should be noted that

where a patent was "before the Examiner during prosecution," the burden of proving invalidity is "especially difficult." *Id.* (quoting *Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004)).

Core argues that Claims 1 and 2 of the '239 Patent were anticipated by the Gould Patent. Claim 1 of the '239 Patent, an independent claim, reads as follows:

> 1. A dual function hunting top garment for use with chest waders, bibs and overalls, comprising:
>> an upper portion, positioned at the sternum and above and including a pair of arms, all substantially comprised of a waterproof and windproof material; and
>> a lower portion attached to said upper portion and extending downward from there, from the chest to the waist, for wear underneath said chest waders, bibs, or overalls, the lower portion comprising breathable non-waterproof and non-windproof material.

'239 Patent, col. 7, ll. 17-26. Claim 2 of the '239 Patent depends on Claim 1. It provides:

> 2. The dual function hunting top garment for use with chest waders according to claim 1, wherein said lower portion further comprises a breathable non-laminated material.

*Id.* at col. 7, ll. 27-30. Core argues that the Gould Patent fully describes the garment set forth in these claims. Mot. Summ. J. 15.

In particular, the Gould Patent discloses a "garment system" comprised of two major elements: (1) a "foundation garment" and (2) "four removable water-resistant components." Gould Patent, col. 2, ll. 5-8, ECF No. 57-22. The foundation garment is made up of two parts—a shirt-jacket and a pant. *Id.* at col. 2, ll. 14-15. These garments are designed of "breathable, non-water-resistant fabric for fair weather." *Id.* at col. 2, ll. 15-16. The foundation garment also includes "waterproof or water resistant fabric panels on the chest, back, lower legs, and lower arms" that prevent the "ingress of moisture or damage to said

foundation garment." *Id.* at col. 2, ll. 16-22. The water-resistant panels provide "an outer wall for pockets on the chest, in the lower back and seat areas" where the wearer can store the removable components of the garment system. *Id.* at col. 2, ll. 22-25.

The second major element of the garment system, described in the Gould Patent as "removable water-resistant components," includes a "hood, a yoke equipped with partial sleeves, and two upper thigh chaps." *Id.* at col. 2, ll. 30-32. These components are made of "waterproof or water resistant fabric." *Id.* at col. 2, ll. 33. "When worn together," the two major elements of the Gould Patent's garment system—the foundation garment and the removable, water-resistant components—"form a rainproof assembly." *Id.* at col. 5, ll. 33-35. For example, when the removable yoke is worn over the shirt-jacket, it encases the "arms, shoulders, upper chest and back, overlapping and detachably attached to" the shirt-jacket. *Id.* at col. 5, ll. 18-21. The "water-resistant rainproof panels" on the shirt-jacket remain "exposed wherever said yoke . . . [does] not afford the wearer protection from precipitation." *Id.* at col. 5, ll. 25-28.

According to Core, the Gould Patent discloses every limitation, expressly or inherently, of Claims 1 and 2 of the '239 Patent. In essence, Core states that when the wearer of the Gould Patent's garment dons the waterproof or water resistant yoke over the breathable, non-water-resistant shirt-jacket, the garment matches completely the product disclosed in the '239 Patent. The upper and lower portions of the Gould Patent's garment become functionally different, with a waterproof and windproof top garment (i.e., the yoke) and a breathable, non-water-resistant lower portion (i.e., the portion of the shirt-jacket not encased by the yoke).

Core also alleges that two limitations in Claims 1 and 2 of the '239 Patent, though not expressly disclosed, are inherently part of the Gould Patent. First, the Gould Patent does not state that the yoke extends over the sternum of the wearer, such that the line of transition between the yoke and the shirt-jacket falls over the sternum. Core argues, however, that a simple visual comparison of the Gould Patent and the '239 Patent shows that the line of transition occurs over the sternum. Second, the Gould Patent fails to disclose a lower portion that is non-windproof. Yet Core asserts that the Gould Patent's specification describes the foundation garment as suitable for "fair weather," while the additional removable components provide "protection from precipitation and/or wind." Gould Patent, col. 2, ll. 6, 10. Thus, the specification indicates that the additional removable components, such as the yoke, must be provided over the shirt-jacket to render the garment windproof.

Core's argument is on the whole unavailing. First, anticipation by the Gould Patent cannot be found unless the "part-to-part relationships set forth in the claims" of the Gould Patent mirror those in the '239 Patent. *Net MoneyIN Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1370 (Fed. Cir. 2008) (citing *Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1459 (Fed. Cir. 1984)). A finder of fact could determine that the parts of the Gould Patent are not "arranged or combined in the same way as in" Claims 1 and 2 of the '239 Patent. *Id.* Indeed, Claims 1 and 2 of the '239 Patent disclose one continuous garment, the upper and lower portions of which are made of different materials, such that when chest waders are worn over the garment, the thermal conditions that the hunter experiences are "equalized." *See* '239 Patent, col. 2, l. 22. The upper portion is waterproof and windproof,

while the lower portion, protected from the elements by the hunter's overlying chest wader, is breathable, non-waterproof, and non-windproof. *Id.* at col. 7, ll. 21, 25-26.

By contrast, the Gould Patent discloses a multi-component garment system. The first component, the shirt-jacket, is a foundational garment made of breathable and non-water-resistant material. Gould Patent, col. 2, l. 15 & col. 5, ll. 11-12. Overlapping the breathable, non-water-resistant material is a water-resistant chest panel, which protects against precipitation. *Id.* at col. 5, ll. 24-28. The second component of the Gould Patent garment, the detachable yoke, is water-resistant, windproof, and equipped with partial sleeves. *Id.* col. 2, ll. 30-32. Importantly, the Gould Patent claims a "rainproof assembly" when these two components are worn together, in part because the "water-resistant rainproof panels" remain exposed "wherever said yoke . . . [does] not afford the wearer protection from precipitation." *Id.* col. 5, ll. 24-32.

Upon careful review of the two patents, this Court finds that a genuine dispute of material fact exists as to whether the garment disclosed by the '239 Patent mirrors the claims of the Gould Patent. The distinct parts of the Gould Patent's multi-component system work together to provide a "rainproof assembly." *Id.* col. 5, ll. 31-32. The yoke along with the water-resistant chest panel protect the wearer's upper body from precipitation. *Id.* This design differs significantly from the '239 Patent's invention, which has upper and lower portions with distinct functions and, most relevant to this analysis, a lower portion designed for warmth but not for water and wind elements. '239 Patent, col. 7, ll. 19-26.

Core suggests that this distinction should not preclude the Court from entering summary judgment, because Claims 1 and 2 of the '239 Patent are written as open-ended

claims, meaning they encompass the limitations of the '239 Patent but do not exclude additional unrecited elements. *See, e.g., Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1348 (Fed. Cir. 2001). However, Core acknowledges that where a prior art's additional element results in the absence of a recited element in the claim at issue, the prior art cannot anticipate the patent claim. *See* Mot. Summ. J. 16 (citing *In re Pelz*, 379 F. App'x 975 (Fed. Cir. 2010). In this case, a fact finder could determine that the addition of the Gould Patent's water-resistant chest panel results in the absence of a claimed element of the '239 Patent. Specifically, the chest panel, when worn with the removable yoke, creates an assembly that is completely rainproof, whereas the '239 Patent discloses a garment whose lower portion, meant for wear underneath a chest wader, is simply breathable and not waterproof. '239 Patent, col. 7, ll. 25-26. Thus this Court cannot find that it is without dispute that the Gould Patent anticipates Claims 1 and 2 of the '239 Patent.

Second, this Court denies Core's argument for invalidity based on anticipation because it cannot find, as a matter of law, that the Gould Patent inherently discloses a line of transition at the sternum. Contrary to Core's suggestion, it would be improper to rely on inferences drawn from a visual comparison of the Gould Patent and '239 Patent to find anticipation of a claim limitation. "[I]t is well established that patent drawings do not define the precise proportions of the elements" of a claim. *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 956 (Fed Cir. 2000). For this reason, the Federal Circuit has found that a court may not rely on a patent drawing to show the dimensions of the invention disclosed "if the specification is completely silent on the issue." *Id.* (citing *In re Wright*, 569 F.2d 1124, 1127 (C.C.P.A. 1977)). Counsel for Core admitted during the motions hearing

held on May 16, 2013, that the Gould Patent does not specify whether the depictions were drawn to scale.  Moreover, there is "complete silence on the issue" whether the end of the yoke is positioned over the sternum.  Following the reasoning of the Federal Circuit in *Hockerson-Halberstadt*, this Court rejects Core's assertion that the Gould Patent's visual depictions cannot be relied on to find the Gould Patent's allegedly inherent line of transition.

In sum, Core has not met its heavy burden in showing invalidity under 35 U.S.C. § 102.  Indeed, there is a genuine dispute regarding whether the Gould Patent discloses "each and every limitation . . . either expressly or inherently" of Claims 1 and 2 of the '239 Patent. *Sanofi-Synthelabo*, 470 F.3d at 1375.  For this reason, Core's argument for summary judgment on the issue of anticipation fails.

### B.  Invalidity Based on Obviousness

Core also asserts that the '239 Patent claims involved in this infringement action are invalid as obvious.  Obviousness is governed by 35 U.S.C. § 103.  Section 103 provides that even if the invention is not anticipated by some prior art, a patent may not be obtained, "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious  . . . to a person having ordinary skill in the art to which the claimed invention pertains."   35 U.S.C. § 103.  A determination as to obviousness involves several factual inquiries: (1) "the scope and content of the prior art;" (2) "differences between the prior art and the claims at issue;" (3) "the level of ordinary skill in the pertinent art;" and (4) secondary considerations such as "commercial success, long felt but unsolved need, [and the] failure of others."  *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17-18 (1966).  In essence, obviousness precludes an invention's patentability where it does

"nothing more than combine the teachings available in a manner which would have been obvious to one skilled in the art." *Zero Mfg. Co. v. Miss. Milk Producers Ass'n*, 358 F.2d 853, 855 (5th Cir. 1966). Particularly relevant in this case, the Federal Circuit explained in *In re Gorman*, 933 F.2d 982 (Fed. Cir. 1991), that it is impermissible "simply to engage in a hindsight reconstruction of the claimed invention, using the applicant's structure as a template and selecting elements from references to fill the gaps."

Core argues that Claims 1, 2, 4, 5, 9, 11, 13, 18, 19, and 21 of the '239 Patent were obvious based on certain prior art—namely, the Gould Patent, along with United States Patent Number 4,868,928 (the "Norvell Patent"), International Patent Application Publication WO 93/005220 (the "Dawson Published Application"), and United States Patent Number 6,328,618 (the "Fleischli Patent").[4] It is crucial to note that each of Core's arguments for obviousness relies heavily on the Gould Patent, as Core claims that the Gould Patent discloses all but a few elements in the patent claims at issue.

Core argues first that Claims 1 and 2, if not found to be anticipated, are surely obvious in consideration of the Gould Patent. Moreover, Core contends that Claims 4, 5, 9, 11, 13, 18, 19, and 21 are all but anticipated by the Gould Patent. According to Core, there are only three limitations in these claims that are not disclosed in the Gould Patent: an inner lining of insulation (found in Claims 4, 5, 9, 18, 19, and 21); the use of fleece for the lower portion of the garment (found in Claims 9 and 21); and the use of neoprene sleeve cuffs (found in Claims 11 and 13). Core reasons, however, that all of these elements are contained in prior art directed to the same field of endeavor. Specifically, the Norvell Patent discloses

---

[4] *See* Norvell Patent, ECF No. 56-10; Dawson Published Application, ECF No. 56-11; Fleischli Patent, ECF No. 56-12.

an inner lining of insulation, the Dawson Published Application discloses the use of fleece, and the Fleischli Patent discloses the use of neoprene cuffs. *See* Mot. Summ. J. 19-22. A person of ordinary skill in the art, Core asserts, would understand the benefits of combining aspects of the Gould Patent and the additional three prior art references, thereby rendering the '239 Patent obvious.

The same heavy burden on Core applies in an obviousness analysis. To show invalidity, Core must prove by clear and convincing evidence that the '239 Patent was obvious and should not have been obtained. *i4i Ltd. P'ship*, 131 S. Ct. at 2243. Moreover, at the summary judgment stage this determination cannot involve a genuine dispute of material fact. It is in consideration of these high burdens that this Court rejects Core's argument.

First, this Court cannot determine whether the '239 Patent was obvious where Core's argument relies heavily on the Gould Patent for all but small limitations that vary from the Gould Patent. In Section I.A of this Memorandum Opinion, this Court explains the important ways in which the Gould Patent differs from the '239 Patent. Specifically, the Gould Patent claims a multi-component garment system, with some removable components, instead of one continuous garment; when those components are worn together, the garment forms a totally rainproof assembly, rather than retaining dual-function upper and lower portions; and the Gould Patent's line of transition is not identified. These differences are relevant to the obviousness analysis under *Graham*, 383 U.S. at 17-18, and they are not so minimal that this Court can find, without dispute, that Icon's claimed invention was obvious. "Even small differences in art may establish patentability when the difference is distinctive [and] has great utility." *Cal. Research Corp. v. Ladd*, 356 F.2d 813, 820 (D.C. Cir. 1966). Core

fails to show how the disparate elements of the '239 Patent were nonetheless obvious in light of the Gould Patent.

Moreover, the Federal Circuit in *Gorman* explains that "[w]hen it is necessary to select elements of various teachings in order to form the claimed invention, [a court must] ascertain whether there is any suggestion or motivation in the prior art to make" such selection. 933 F.2d at 987. The suggestion "may be implicit from the prior art as a whole, rather than expressly stated in the references." *In re Kahn*, 441 F.3d 977, 987-88 (Fed. Cir. 2006) (quoting *In re Kotzab*, 217 F.3d 1365, 1370 (Fed. Cir. 2000)). However, a court may not simply "engage in a hindsight reconstruction of the claimed invention." *Gorman*, 933 F.2d at 988.

In this case, Core fails to point to any suggestions, implicit or explicit, in the prior art that "provide some teaching whereby the applicant's combination would have been obvious." *Id.* Rather, Core seeks to have this Court engage in the "hindsight reconstruction" that the Federal Circuit warned against. It is, therefore, not without dispute that one skilled in the art could have combined the benefits of the four prior art references to attain the design disclosed in the '239 Patent. Accordingly, Core has not proven the '239 Patent to be obvious, and this issue must be left for the fact finder to determine at trial.

## II. Core's Argument for Noninfringement by the Redesigned Wader Shirt

Core's next argues that it is entitled to summary judgment as to the infringement contentions against the Redesigned Wader Shirt. Infringement claims fall into two broad categories: literal infringement and infringement under the doctrine of equivalents. "Literal infringement exists if each of the limitations of the asserted claim(s) read[s] on, that is, [is]

found in, the accused device." *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995). Alternatively, where a product does not literally infringe, a court may find infringement under the doctrine of equivalents if there is "'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1312 (Fed. Cir. 2008) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997)).

## A. Infringement Contentions Under the Doctrine of Equivalents

Preliminarily, this Court finds that Icon has waived any infringement contentions against Core's Redesigned Wader Shirt under the doctrine of equivalents. Icon alleged in its Complaint that Core's garments infringe "literally and/or under the doctrine of equivalents" the '239 Patent. Compl. ¶ 16. However, in Icon's Initial Disclosure of Infringement Contentions served on March 16, 2012, as well as in its amended disclosure served on April 9, 2012,[5] Icon failed to assert that its infringement contentions involved application of the doctrine of equivalents, as required by Local Rule 804.1(a).[6] At the motions hearing on May 16, 2013, counsel for Icon explained that this omission was inadvertent. Icon also suggested that Core was on notice of its contentions under the doctrine of equivalents, as the report submitted by Icon's expert, Dr. David Brookstein ("Dr. Brookstein"), included an analysis under the doctrine of equivalents. *See* Brookstein Report 11-12, ECF No. 57-4. Thus, Icon argues that Core suffered no prejudice as a result of the omission.

---

[5] *See* Pl.'s Initial Disclosure Infringement Contentions, ECF No. 56-7; Pl.'s Am. Disclosure Infringement Contentions, ECF No. 57-18.
[6] Local Rule 804.1(a) requires a party alleging infringement to serve on all parties, thirty days from the date of the scheduling order, a disclosure of infringement contentions that sets forth "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." *See* Local Rule 804.1(a)(v) (D. Md. 2011).

This Court's Local Rule 804.1(a) clearly sets out a plaintiff's obligation to disclose its infringement allegations in detail—including whether those allegations rely on the doctrine of equivalents. Yet Icon neglected to disclose that it was pursuing a theory of infringement under the doctrine of equivalents. Moreover, Icon has never sought leave to amend its disclosure of infringement contentions to include that theory. Only now, well over a year since it served its disclosures and after the close of discovery, Icon clarifies that it never intended to relinquish its contentions under the doctrine of equivalents.

This clarification comes at too late a stage in the litigation of this case, and it is clear that Core would suffer prejudice if Icon were permitted to advance its argument under the doctrine of equivalents. Core reasonably developed its defense strategy based on an understanding that Icon was only pursuing a claim of literal infringement. Core's discovery was also premised on this understanding. As the Federal Circuit has stated, local rules establishing infringement disclosures are meant to prevent a party from "shifting sands" during litigation. *See Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002). Accordingly, this Court finds that by failing to include its infringement contentions under the doctrine of equivalents as required by Local Rule 804.1(a), Icon has waived those contentions. Summary judgment IS ENTERED in favor of Core and against Icon as to Icon's infringement contentions under the doctrine of equivalents.

## B. Literal Infringement

Core also asks this Court to grant summary judgment on the issue of literal infringement by Core's Redesigned Wader Shirt. Determining whether a patent claim has been literally infringed involves two steps: "first, the claim must be interpreted, as a matter

of law, to ascertain its proper scope; second, a determination must be made whether the properly construed claim reads on the accused device." *Baxter Healthcare*, 49 F.3d at 1582. To find literal infringement, each limitation must be found in the accused device. *Id.*

Core argues that Icon's infringement claims against the Redesigned Wader Shirt should be rejected because every claim of the '239 Patent requires a line of transition over the sternum. By contrast, Core states that its Redesigned Wader Shirt lacks a line of transition over the sternum. In fact, Core explains that it redesigned the garment to have a line of transition four to five inches below the sternum in order to avoid infringement of the '239 Patent. Cook Aff. ¶¶ 83-84, Exs. E1-E10. Core also notes that Dr. Brookstein acknowledges in his expert report that the line of transition on the Redesigned Wader Shirt is "located about an inch beneath the lower sternum." Brookstein Report 11-12.

Core's argument as to infringement relies heavily on tests that Core's President, Kevin Cook ("Cook"), performed on himself and two other test subjects, one of whom is a Core employee. *See* Cook Aff. ¶¶ 40-63. Cook testifies that each individual donned Core's Original and Redesigned Wader Shirts, and after viewing a model of a human skeleton, estimated the location of the lowermost end of their sternums. *See id.* ¶¶ 41-42, 49-50, 63. They then marked these locations on the garments with adhesive dots. *See id.* ¶ 46. Afterward, they removed the garments, and Cook measured the distance between the dots and the line of transition on the garment. *See id.* ¶ 48. Exhibits E1 through E10 are photographs of the Redesigned Wader Shirt worn by each test subject and marked with adhesive dots at the points the test subjects believed to be the bottom of their sternums. *Id.* ¶¶ 73-82. Based on these tests and photographs, Core asks this Court to find that no

genuine dispute of fact exists as to whether the Redesigned Wader Shirt infringes the '239 Patent, as the tests show that the line of transition on Core's garment "was located below the lowermost end of each and every wearer's sternum." *Id.* ¶ 83.

For several reasons, this Court's rejects Core's argument. First, Cook's tests are not entirely reliable. There is a reasonable concern that Cook, as Core's President, is not able to make unbiased assessments as to the evidence relating to Icon's infringement claims. Further, the tests Cook conducted involved only three test subjects, which is a relatively small sample from which Core asks this Court to make a conclusive determination regarding an important feature of the Redesigned Wader Shirt.

Moreover, the tests themselves admit dispute. As Icon points out, it is debatable whether each of the test subjects accurately identified the bottom of his sternum. Dr. Brookstein explains that the lowermost end of the sternum is not easy to locate with one's finger. *See* Affidavit of Dr. Brookstein ("Brookstein Aff.") ¶¶ 8, 10. The end of the sternum is called the xiphoid process. *Id.* ¶ 8. Because of the "inward curvature" of the xiphoid process, Dr. Brookstein states that "running a finger down the sternum would most likely locate the upper end of the xiphoid process" and not the lowermost end of the sternum. *Id.*

Finally, while Core insists that Dr. Brookstein agrees that the line of transition of the Redesigned Wader Shirt falls below the sternum, Dr. Brookstein's report is not so decisive. Core correctly identifies a portion of Dr. Brookstein's report in which he states that the line of transition on Core's garment is "located about an inch beneath the lower sternum." Brookstein Report 11-12. Yet in an earlier portion of his report, Dr. Brookstein opines that the "precise location" of the line of transition on Core's Redesigned Wader Shirt "will vary

depending on the anatomy of the wearer." *Id.* at 10. Despite those variances, however, Dr. Brookstein states that "the top portion extends upward from the lower end of the sternum while the lower portion extends downward from the lower end of the sternum." *Id.* The fact that Dr. Brookstein's report contains contradictory opinions suggests that a genuine dispute of fact exists regarding the line of transition of the Redesigned Wader Shirt.

In sum, neither Dr. Brookstein's report nor Cook's test results conclusively establishes the noninfringement by Core's Redesigned Wader Shirt. Accordingly, this issue must be left to the finder of fact.

## III. Core's Arguments Regarding Damages

Finally, Core requests summary judgment as to three separate damages issues.[7] Assuming Icon were successful in proving infringement, Core suggests that Icon's damages would be severely limited. This Court addresses each issue in turn.

### A. Damages for Core's Conduct Prior to January 15, 2008

Icon alleges that it is entitled to monetary damages for Core's sale of Wader Shirts prior to the issuance of the '239 Patent on January 15, 2008. Generally, a patent has no retroactive effect, and damages are available only for infringement "during the term of the patent." *See* 35 U.S.C. § 271(a). Under 35 U.S.C. § 154, however, a patent owner may be entitled to certain "provisional rights." Among those rights is "the right to obtain a reasonable royalty from any person who, during the period beginning on the date of

---

[7] Although Core presents four damages issues for resolution, two implicate the same question—whether Icon would be entitled to publication damages prior to the issuance of the '239 Patent. *See* Mot. Summ. J. 23-27. Therefore, this Court addresses Core's first argument, surrounding whether Icon would be entitled to any pre-issuance damages, and third argument, regarding publication damages, together.

publication of the application," infringes the patent. 35 U.S.C. § 154(d)(1). This provisional right, referred to as "publication damages," applies only if (1) the alleged infringer "had actual notice of the published patent application" and (2) the "invention as claimed in the patent is substantially identical to the invention as claimed in the published patent application." *Id.* § 154(d)(1)-(2).

The "substantially identical" standard is the same as that applied under 35 U.S.C. § 252. *See* H.R. Rep. No. 105-39, Title II, § 204 (Mar. 20, 1997); *see also Pandora Jewelry, LLC v. Chamilia LLC*, No. CCB-06-600, 2008 WL 3307156, at *9 (D. Md. Aug. 8, 2008). As previously noted by this Court, under § 252, "amended patent claims are 'substantially identical' to the original claims 'if they are without substantive change.'" *Pandora Jewelry*, 2008 WL 3307156, at *9 (quoting *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998)). "[A]ny word change whatsoever" is not enough to prove a substantive change, but where a word change alters the scope of a claim, that amended claim is not substantially identical. *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1116 (Fed. Cir. 1987).

Core argues that publication damages would be improper in this case, because the '239 Patent and the '360 Patent Application Publication are not substantially identical. After review of the relevant record, this Court finds that Icon is not entitled to publication damages, because it cannot be disputed that the '239 Patent is not "substantially identical" to the invention claimed in Icon's '360 Patent Application Publication. The '239 Patent's two independent claims, Claims 1 and 18, correspond to Claims 1 and 15 of the '360 Patent Application Publication. Claims 1 and 15 describe the upper portion of the hunting garment as comprised of a "waterproof *or* windproof" material. *See* '360 Patent Application

Publication 4 (emphasis added). These claims were amended after the application was published, however, such that Claims 1 and 18 of the '239 Patent claim an upper portion comprised of "waterproof *and* windproof" material. *See* '239 Patent, col. 7, l. 21 & col. 8, ll. 39-40 (emphasis added).

Icon suggests that in amending Claims 1 and 15 of the '360 Patent Application Publication, they sought only to clarify the text of the claims and thus should not barred from receiving publication damages. However, the Federal Circuit in *Predicate Logic, Inc. v. Distributive Software, Inc.*, 544 F.3d 1298 (Fed. Cir. 2008), explained that "[a]n amendment that clarifies the text of the claim or makes it more definite *without affecting its scope* is generally viewed as identical." *Id.* at *1305 (emphasis added). In *Predicate Logic*, the Federal Circuit reviewed a district court's finding that an amendment to a claim had "effected a substantive change by narrowing the claim." *Id.* at *1304 (internal quotations omitted). The Federal Circuit reversed with the lower court's ruling, finding that the addition of two phrases— "first" and "second"—to modify the word "instantiation" did not alter the claim's scope, because elsewhere the claim language indicated that the invention involved "at least two instantiations." *Id.* at *1306. Thus, the court in *Predicate Logic* held that the amendment did not narrow the scope of the claim.

In this case, Icon's amendments did narrow the scope of the claims. Instead of an upper portion that can be either waterproof or windproof, the upper portion disclosed in the '239 Patent must be both waterproof and windproof. This amendment yields a substantive change, narrowing the types of garments that the '239 Patent would encompass. *Slimfold*, 810 F.2d at 1116. Claims 1 and 15 of the '360 Patent Application Publication and Claims 1

and 18 of the '239 Patent are, therefore, not "substantially identical" under 35 U.S.C. § 154.

Consequently, summary judgment IS ENTERED in favor of Core and against Icon as to

Icon's claim that it is entitled to publication damages.

### B. Damages for the Period During Which Icon Failed to Mark

To be entitled to infringement damages, a patent owner must satisfy either the

marking or actual notice requirement of 35 U.S.C. § 287. Icon has admitted that between

January 15, 2008, when the '239 Patent issued, and October 1, 2010, it did not mark its

patented product as set out in § 287(a). Sherrill Aff. ¶ 6, Ex. 4, Requests for Admission 1-4.

Thus, the relevant portion of § 287 provides as follows:

> In the event of failure so to mark, no damages shall be recovered by
> the patentee in any action for infringement, except on proof that the
> infringer was notified of the infringement and continued to infringe
> thereafter, in which event damages may be recovered only for
> infringement occurring after such notice.

*Id.* § 287(a).

Icon argues that though it failed to mark its patented product, it should still receive

infringement damages for the period after it provided actual notice to Core according to

§ 287(a). Specifically, Icon sent Core's President, Kevin Cook, a letter dated February 14,

2008 (the "2008 Notice Letter"), stating that Core's Wader Shirt infringed the '239 Patent

and demanding that Core cease all sales of the garment. *See* 2008 Notice Letter, ECF No.

56-83. Over two years later, on September 27, 2010, Icon wrote another letter to Core (the

"2010 Notice Letter"), explaining that Core's Wader Shirt still infringed the '239 Patent,

despite Core's "product change." *See* 2010 Notice Letter, ECF No. 56-84.

Core insists that the 2008 Notice Letter constitutes actual notice only for the Original Wader Shirt and not for the Redesigned Wader Shirt. As Core explains, upon receipt of the 2008 Notice Letter, Core halted production of the Original Wader Shirt and advised Icon that it was in the midst of redesigning its garment to avoid infringement. Cook Aff. ¶ 16; Sherrill Aff. ¶ 15, Ex. 13, ECF No. 56-15. Thereafter, Core manufactured and imported only the Redesigned Wader Shirt. Cook Aff. ¶ 19. Actual notice under § 287(a), Core contends, "requires the affirmative communication of a specific charge of infringement by a *specific accused product or device.*" *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) (emphasis added); *see also Eastman Kodak Co. v. Agfa-Gevaert N.V.*, 560 F. Supp. 2d 227 (W.D.N.Y. 2008). Icon's 2008 Notice Letter constituted notice only as to the Original Wader Shirt, Core argues, as the Redesigned Wader Shirt had not yet been created and, therefore, could not have been the target of a specific accusation of infringement.

The actual notice requirement under § 287(a) is "designed to ensure that the recipient knew of the adverse patent during the period in which liability accrues." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1460 (Fed. Cir. 1997). The requirement is met "when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient . . . may be an infringer." *Id.* Sufficient specificity entails notice of (1) the identity of the patent and (2) the "activity that is believed to be an infringement." *Id.* Whether a patentee has provided adequate notice under § 287(a) is a question of fact. *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996).

In this case, Icon's 2008 Notice Letter accused Core's Wader Shirt of infringement. It is without dispute that Icon's letter implicated the Original Wader Shirt, as it was the only

Wader Shirt on the market at that time. *See* Cook Aff. ¶¶ 15-17; Mot. Summ. J. 25 ("Core does not dispute that the 2008 Notice from Icon constituted sufficient actual notice . . . as to the *Original* Wader Shirt."). The crucial question is whether the 2008 Notice Letter was sufficiently specific to put Core on notice that its Redesigned Wader Shirt, which was developed later, would also constitute "activity that is believed to be an infringement." *SRI Int'l*, 127 F.3d at 1460.

At least one court has addressed this question, noting that the law surrounding the actual notice requirement—and specifically, the extent to which a form of notice must accuse a specific product—is "not well-developed." *See Coca-Cola Co. v. Pepsico, Inc.*, No. 102-CV-2887-RWS, 2004 WL 4910334, *29 (N.D. Ga. Sept. 29, 2004). In *Coca-Cola*, the plaintiff alleging infringement, Coca-Cola, owned a patent for collapsible bags used in the packaging and dispensing of soft drinks. *Id.* at *1. Coca Cola sent communications to the defendants, asserting that the defendants' own bags used for dispensing soft drinks infringed Coca-Cola's patented invention. *Id.* at *28. After receiving that notice, the defendants altered their device to avoid infringement. *Id.* at *28-29. Coca-Cola later filed suit, alleging that the altered device infringed Coca-Cola's invention. *Id.* at *28.

Similar to Core's contention in this case, the defendants in *Coca-Cola* insisted that they had not received actual notice under § 287(a), because Coca-Cola's letter had not specifically accused the altered device of infringement. *Id.* at *29. On the other hand, Coca-Cola argued, as Icon has in this case, that the altered device was sufficiently similar to the collapsible bag that was specifically accused in Coca-Cola's communications, such that a court could find that Coca Cola had given actual notice as to the altered device. *Id.* The

court in *Coca-Cola* reasoned that the actual notice requirement, if construed "most strictly," could support the argument that "any alteration of the device . . . entirely precludes a patentee from establishing the requisite 'actual notice.'" *Id.* The court rejected this standard, and its reasoning for doing so is apt:

> [D]emanding complete identity between the device to which the "actual notice" relates and the allegedly infringing product would permit an infringer to make even the most insubstantial "tweaks" to a device—*e.g.,* altering a particular structure in its color or size—and entirely escape the impact of notice which unambiguously relates a charge of infringement. Such a result is not supported by the language of the statute, and would impose upon patentees the extraordinarily onerous and unwarranted burden of dissecting each iteration of a competitor's product to determine if any minute change compels an additional, supplemental notice of infringement.

*Id.* at *30. Moreover, the Court found such a rigid standard to be "in tension with the Federal Circuit's recognition that the 'actual notice' inquiry should be applied with some degree of flexibility." *Id.* (citing *SRI Int'l*, 127 F.3d at 1470).

Balancing the Federal Circuit's guidance that § 287(a) requires notice "of a specific charge of infringement by a specific accused product or device," *Amsted Indus.*, 24 F.3d at 187, with its holding that § 287(a) should be applied flexibly, *SRI Int'l*, 127 F.3d at 1470, the court in *Coca-Cola* applied an "intermediate standard." 2004 WL 4910334, at *30. The actual notice requirement would be satisfied, the court found, "where the accused device is merely a modification or evolution of that referenced in the notice of infringement and fails to exhibit a substantial functional change from the device so referenced." *Id.* Applying this standard, the court in *Coca-Cola* found that a genuine issue of material fact existed as to whether Coca-Cola's communications constituted actual notice of infringement by the defendants' altered device. *Id.* at *31. It was for a jury to determine whether the altered

device differed substantially or was "merely a modification" of the device referenced in Coca-Cola's communications.  *Id.*

While the reasoning in *Coca-Cola* is not binding on this Court, it is persuasive, and at least one other court has relied on it.  *See Eastman Kodak Co. v. Agfa-Gevaert N.V.*, 560 F. Supp. 2d 227, 239-40 (W.D.N.Y. 2008).  In *Eastman Kodak*, the court followed the guidance of the court in *Coca-Cola* and compared the differences between the accused product and altered product.  *Id.* at *240-41.  The court in *Eastman Kodak* determined that a notice letter did not constitute actual notice as to an altered product because there were "substantial functional differences" between the altered and accused products.  *Id.* at *241.  Importantly, the court's decision came at the close of a bench trial on the plaintiff's claims of infringement.  *Id.* at *234.  In its earlier summary judgment decision, the *Eastman Kodak* court determined that this question was one "of fact that must be resolved by the trier of fact upon proof at trial."  *Eastman Kodak Co. v. Agfa-Gevaert N.V.*, No. 02-CV-6564T, 2006 WL 1913368, *3 (W.D.N.Y. July 11, 2006).

In this case, the major difference between the accused Original Wader Shirt and the later-developed Redesigned Wader Shirt is the location of the line of transition.  In almost all other ways, however, the garments are identical.  Core argues that the lowering of the line of transition is a substantial difference because it "significantly impacts a claim limitation found in each and every one of the claims in the '239 Patent."  Mot. Summ. J. 25.  Icon, on the other hand, suggests that it is a question of fact whether Core's altered design constitutes a substantial difference—and that this question cannot be resolved at this stage.  Resp. 24.

This Court finds that a question of fact exists as to whether the lowering of the line of transition on the Redesigned Wader Shirt constituted a substantial difference. This ruling is in line with the decision of the *Coca-Cola* court, which reserved the actual notice issue for trial. *See* 2004 WL 4910334, at *31. It is likewise in line with the summary judgment decision in *Eastman Kodak*. 2006 WL 1913368, *3. As that court helpfully explained, because the record revealed both "significant similarities" and "differences" in the accused and altered devices, "[i]t [was] for the trier of fact to determine whether or not the differences in the [two products] are material to the issue of notice." *Id.* Likewise, a jury in this case will have to consider whether the alteration that Core incorporated into its Redesigned Wader Shirt is "material" to the issue of actual notice. Because a genuine dispute exists, summary judgment on this issue is denied.

### C. Lost Profits Damages

Finally, Core advances the argument that Icon is not entitled to lost profit damages for Core's alleged infringement of the '239 Patent. Under 35 U.S.C. § 284, a plaintiff that prevails on a claim of infringement is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." Where the patent owner and infringer compete in the same market, as in this case, measuring damages by lost profits is appropriate. *See, e.g., Mitutoyo Corp. v. Cent. Purchasing, LLC*, 499 F.3d 1284, 1291 (Fed. Cir. 2007).

To be awarded lost profits, a patent owner must show that "'but for' the infringement, it would have made the infringer's sales." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993). Under a test first articulated by the Sixth

Circuit, a patent owner seeking to obtain lost profits must demonstrate, among other showings, "the absence of acceptable noninfringing substitutes." *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978); *see also Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578-79 (Fed. Cir. 1983) (noting that the *Panduit* test can be used to prove lost profits, though it is not the only available test). "[M]arket sales of an acceptable noninfringing substitute often suffice alone to defeat a case for lost profits." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1352 (Fed. Cir. 1999).

Core specifically argues that Icon cannot prove lost profits, because the market sales of two acceptable noninfringing substitutes—Core's Redesigned Wader Shirt and Icon's own "EQWADER" garment, which has been on the market since at least February 17, 2011—defeat Icon's case. This argument, however, is premature for at least two reasons. First, Core relies primarily on the fact that its own Redesigned Wader Shirt constitutes an acceptable noninfringing substitute to Icon's patented garment. *See* Mot. Summ. J. 35. This Court, however, has denied Core's request to find the Redesigned Wader Shirt noninfringing. *See supra* Section II.B. Thus, the market sales of the Redesigned Wader Shirt may not matter in determining lost profits damages, depending on whether a jury determines that the Redesigned Wader Shirt infringes the '239 Patent.

Second, Core argues that Icon's EQWADER garment is an acceptable noninfringing substitute. Core relies, however, on the same methods it used to find its own Redesigned Wader Shirt to be noninfringing, methods which this Court rejected as unreliable and inconclusive. *See* Section II.B. Specifically, Core's President, Kevin Cook, along with two other test subjects, estimated where their sternums ended and measured those points in

relation to the line of transition on the EQWADER garment.  Cook Aff. ¶¶ 85-87, 101-02, Exs. F1-F10, G1-G10, H1-H0, I1-I10.  For all of the reasons articulated in Section II.B of this Memorandum Opinion, this Court cannot find that the EQWADER garment is noninfringing based on this evidence and at this stage of the proceeding.

Accordingly, Core's request for summary judgment is denied as to the issue of lost profits damages.  It cannot be determined at this stage whether the two garments Core identifies as noninfringing are in fact noninfringing, and this issue is properly left for the fact finder's resolution at trial.

## CONCLUSION

For the reasons stated above, Core's Motion for Summary Judgment (ECF No. 56) is GRANTED IN PART and DENIED IN PART.  Specifically, Core's Motion for Summary Judgment is GRANTED as to (1) Icon's waiver of its infringement contentions under the doctrine of equivalents and (2) the award of publication damages under 35 U.S.C. § 154(d). Because genuine issues of material fact exist, Core's Motion for Summary Judgment is DENIED as to the following issues: (1) the validity of the '239 Patent; (2) whether Core's Redesigned Wader Shirt literally infringes the '239 Patent; (3) the potential award of damages for infringement during the period in which Icon failed to mark under 35 U.S.C. § 287(a); and (4) the potential award of lost profits damages.  Accordingly, partial summary judgment IS ENTERED in favor of Core and against Icon on Icon's allegations of infringement on the basis of doctrine of equivalents as well as on Icon's claim for publication damages.

A separate Order follows.

Dated:        June 7, 2013                        _____/s/_____

                                                  Richard D. Bennett
                                                  United States District Judge